F I L E D
CLERK OF COURT
2025 JUN -2 PM 3: 58
SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **GUAM DEPARTMENT OF EDUCATION,** | **SPECIAL PROCEEDING NO. SP0095-21** |
| Petitioner, | |
| vs. | |
| **GUAM CIVIL SERVICE COMMISSION,** | **DECISION AND ORDER GRANTING GDOE'S PETITION FOR JUDICIAL REVIEW AND DENYING TAISIPIC'S PETITION FOR DECLARATORY RELIEF** |
| Respondent, | |
| and | |
| **MARK J.S.N. TAISIPIC,** | |
| Real Party in Interest. | |

This matter came before the Honorable Dana A. Gutierrez on December 17, 2024, for a hearing on competing petitions by Petitioner Guam Department of Education ("GDOE") and by Real Party in Interest Mark J.S.N. Taisipic ("Taisipic"). At the hearing, Attorney Matthew E. Wolff appeared on behalf of GDOE, Attorney Jacqueline T. Terlaje appeared on behalf of Taisipic, and Attorney Katherine M. Nepton appeared on behalf of Respondent Civil Service Commission ("CSC").[1]

Both Petitions arise from a Decision and Judgment by the CSC, which voided GDOE's termination of Taisipic's employment. GDOE brings a Petition for Judicial Review ("GDOE Petition"), seeking to overturn the Decision and Judgment on its merits. Taisipic brings a Petition

---

[1] The CSC has consistently maintained that it takes no position in this matter. *See, e.g.,* Notice of No Position (Oct. 7, 2021); Respondent's Br. (Jul. 8, 2024).

for Declaratory Relief ("Taisipic Petition"), seeking a declaration that GDOE violated the "60-day rule" provided by the then-operative version[2] of 4 GCA § 4406(b). After review of the Petitions, written briefings, oral arguments, and applicable Guam law, the Court **DENIES** Taisipic's Petition, **GRANTS** GDOE's Petition, **VACATES** the CSC's May 20, 2021 Decision and Judgment, and **REMANDS** the matter to the CSC for further proceedings not inconsistent with this Decision and Order.

## BACKGROUND

On December 4, 2014, Taisipic—at the time, a teacher with GDOE—was charged in Superior Court of Guam Criminal Case No. CF0622-14 ("CF0622-14"). *See* GDOE Petition at 2 (June 18, 2021). The criminal case involved allegations that Taisipic committed acts of criminal sexual conduct against a minor. *Id.* After Taisipic's first court appearance in CF0622-14, the Superior Court issued an Order of Conditional Release, which ordered that Taisipic be released from pre-trial confinement, subject to certain conditions. *See* GDOE Petition, Ex. A. One condition was that Taisipic have "NO CONTACT/STAY AWAY . . . [from] any public or private schools or other school events where minors are present." *Id.* at 1.

Separately on December 4, 2014, Dr. Jon Fernandez—then the Superintendent of GDOE—received a Memorandum from a GDOE Assistant Superintendent.[3] The Memorandum stated that local media was reporting that Taisipic had been arrested. GDOE Petition at 2. The Memorandum requested that GDOE commence an investigation into the allegations against Taisipic, and also

---

[2] Since 2018, 4 GCA § 4406(b) has provided for a "90 day rule." *See* 4 GCA § 4202.2, 2019 Note; *Port Auth. of Guam v. Civ. Serv. Com'n (Susuico)*, 2019 Guam 15 ¶ 11. However, during the relevant time period for this case (December 2014 through February 2015), the statute provided for a "60-day rule." *See id.*

[3] While the Memorandum bears Assistant Superintendent Gabriel's name, the Memorandum was in fact signed by Acting Assistant Superintendent Cathy Tydingco. *See* Tr. at 80-81 (Apr. 15, 2021).

requested that Taisipic be temporarily reassigned to a different work position, where he would have no contact with GDOE students. *See id.*

On December 15, 2014, Taisipic provided GDOE with written notice of the criminal charges against him, including a copy of the Superior Court's Order of Conditional Release. *Id.* This written notice contains a stamp which provides a receipt date of December 16, 2014. *See* Transcript ("Tr.") at 68-69 (Apr. 15, 2021).

On January 23, 2015, GDOE served Taisipic with a Notice of Proposed Adverse Action ("NPAA") based on his alleged "incapacity to perform required duties." GDOE Petition, Ex. B at 6-7. The NPAA asserted that teachers who "fail[] to meet the duties required of that profession may be determined *incapacitated.*" (emphasis in original). *Id.* The NPAA then explained:

> This notice is based solely on the fact that you are prevented by the courts from entering any public or private school or attending school events where minors are present. . . . A teacher that is legally barred from all contact with minors, lacks the capacity to teach because he [is] denied access to his work site, students and prevented from performing the essential functions of his job.

*Id.* On January 30, 2015, Taisipic submitted a written Answer to the NPAA, asking GDOE to delay adverse action proceedings until his criminal case resolved. *See* GDOE Petition, Ex. C.

On February 11, 2015, GDOE served Taisipic with a Final Notice of Adverse Action ("FNAA"). GDOE Petition, Ex. D. The FNAA asserted that Superintendent Fernandez only had the authority to temporarily transfer employees to perform other work for up to 90 days, and that Taisipic's criminal case was unlikely to be fully resolved within 90 days. *Id.* The FNAA also asserted that Taisipic stood accused of serious criminal offenses against minors, so Taisipic could not be reinstated to his teacher position in light of the Superior Court's stay-away order and GDOE's independent duty to "safeguard and promote the welfare of children and maintain public trust in the teaching position." *See id.* Because Taisipic could not report to work, Superintendent

3

Fernandez determined that the charge of incapacity set forth in the NPAA was warranted; he thus terminated Taisipic's employment. *Id.*

On February 17, 2015, Taisipic appealed the FNAA to the CSC, creating CSC Adverse Action Appeal Case No. 15-AA04T. GDOE Petition at 5. In May 2016, per a stipulation by the parties, the CSC ordered Case No. 15-AA04T stayed pending the resolution of Taisipic's criminal case. *Id.* On June 11, 2019, CF0622-14 was resolved after Taisipic entered an "Alford plea" on charges of Official Misconduct and Child Abuse. GDOE Petition at 5.

On October 17, 2019, Taisipic moved the CSC to void his termination based on GDOE's purported violation of the statutory "60-day rule." The CSC ruled in favor of GDOE, concluding that GDOE did not know, and could not have known, the facts forming the basis of Taisipic's termination until December 15, 2014, so service of the FNAA on February 11, 2015, was timely. *See* Taisipic Supp. Excerpts of Record ("SER"), Ex. A (Jul. 9, 2024).

On April 15, April 27, and May 4, 2021, the CSC heard the merits of Taisipic's appeal. *Id.* at 6. Ultimately, three of the five CSC Commissioners voted in favor of GDOE, and two voted in favor of Taisipic. *Id.* Since GDOE needed four favorable votes to prevail, *see* 4 GCA § 4407(a), the FNAA was voided and Taisipic was reinstated. *Id.* On May 20, 2021, the CSC issued a written Decision and Judgment to memorialize this ruling. GDOE Petition, Ex. E.

On June 18, 2021, GDOE filed its Petition with the Superior Court of Guam, seeking review of the CSC's Decision and Judgment. Taisipic initially did not respond to GDOE's Petition. As set forth in more detail in the Court's Decision and Order (Apr. 24, 2023), GDOE thereafter submitted an Application for Default Judgment, which the Court denied. In doing so, the Court also accepted the filing of Taisipic's Petition. On June 23, 2023, GDOE filed a Response to

4

Taisipic's Petition. As set forth in more detail in the Court's Decision and Order (Jan. 29, 2024), Taisipic moved to strike GDOE's Response, which the Court also denied.

On March 29, 2024, the Court set a briefing schedule on the Petitions. *See* Order (Mar. 29, 2024). After briefing concluded, the Court heard oral arguments on December 17, 2024, and thereafter took the matter under advisement.

## DISCUSSION

### 1. Principles of Judicial Review

Under 4 GCA § 4406(f) and 5 GCA § 9240, a government agency may petition the Superior Court for judicial review of an adverse action appeal. The Court reviews a petition for judicial review in accordance with the Administrative Adjudication Law ("AAL"), *see Guam Waterworks Auth. v. Civil Serv. Comm'n (Mesngon)*, 2014 Guam 35 ¶ 8, and considers whether the CSC's decision is "not in accordance with law or not supported by substantial evidence," 5 GCA § 9240. The Court reviews the CSC's conclusions of law *de novo* and reviews the CSC's findings of fact under the "substantial evidence" standard. *See, e.g., Charfauros v. Civ. Serv. Comm'n (Guam Police Dep't)*, 2022 Guam 19 ¶ 17. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and amounts to "more than a mere scintilla, but less than a preponderance." *Id.*

### 2. Substantial Evidence Supports the CSC's "60-Day Rule" Conclusion

The Court first considers Taisipic's Petition, which reargues an issue already decided by the CSC. Taisipic argues that GDOE violated the statutory 60-day rule by serving the FNAA on February 11, 2015. Under the then-operative[4] version of 4 GCA § 4406, GDOE was required to

---

[4] The statute has since been amended to reflect a "90-day rule" rather than a "60-day rule." *See Port Auth. of Guam v. Civ. Serv. Comm'n (Susuico)*, 2019 Guam 15 ¶¶ 10-11. However, "[b]ecause the facts of this case occurred while the prior version of the rule was in place," the prior rule governs this case. *Id.* ¶ 11.

5

serve the FNAA "no later than . . . sixty (60) calendar days from the date in which management knew or should have known the facts or events which form the alleged basis for the adverse action." 4 GCA § 4406(b)(1)(A) (2015) (emphasis added).

Taisipic argues that the 60-day clock commenced on December 4, 2014: the date on which Superintendent Fernandez received the Memorandum and thus gained actual knowledge of Taisipic's criminal prosecution. Taisipic Opening Br. at 5-6. If Taisipic is correct, then the FNAA needed to be served by February 2, 2015, and since it was not, the 60-day rule was violated, and his termination was void ab initio. *See* 4 GCA § 4406(b)(4). GDOE argues that the CSC correctly determined that the 60-day clock commenced on December 15, 2014: the date on which Taisipic provided GDOE with written notice of his criminal case and provided a copy of the Superior Court's Order of Conditional Release. *See* Reply Br. at 2-3; SER, Ex. A at 3-4. If GDOE is correct, then the FNAA needed to be served by February 13, 2015, and since it was, the 60-day rule was not violated.

The Court reviews the CSC's determination of when an agency "knew or should have known" the facts relevant to the 60-day rule for substantial evidence. *See Port Auth. of Guam v. Civil Serv. Comm'n (Guevara)*, 2018 Guam 1 ¶ 41 (applying the "extremely deferential" substantial evidence standard to analyze a 60-day rule claim); *Susuico*, 2019 Guam 15 ¶¶ 13-14 (similar). Here, there was substantial evidence to support the CSC's finding. The NPAA and FNAA charge Taisipic with "incapacity to perform required duties;" thus, the question is when GDOE knew or should have known the facts of Taisipic's "incapacity." There was substantial evidence to support the CSC's finding that Taisipic was forbidden from coming to his place of work; this was plain on the face of the Superior Court's Order. There was also substantial evidence to support the finding that GDOE did not know this specific fact until December 15, 2014. The

6

undisputed evidence showed that Taisipic provided GDOE with a copy of the Order of Conditional Release on December 15, 2014. There was no evidence before the CSC suggesting that GDOE had a copy of the Order, or knowledge of the specific stay-away condition it imposes, prior to that date. Although the evidence suggested that GDOE had actual knowledge that Taisipic had been *arrested by* December 4, 2014, an arrest—even for a serious charge like the one Taisipic was accused of—does not automatically result in a stay-away order. The imposition of pre-trial release conditions is discretionary, not mandatory. *See* 8 GCA § 40.20; *People v. Song*, 2011 Guam 19 ¶ 10. A court may impose restrictions on a defendant's "associations" and "movements," 8 GCA § 40.20(b), but it is not required to do so. Thus, GDOE's knowledge of Taisipic's arrest is not tantamount to knowledge that he had been specifically ordered to stay away from GDOE schools. GDOE did not acquire that specific knowledge until December 15, 2014.

Taisipic cites to 4 GCA § 4202.2(b) to support his claim that the 60-day clock in fact commenced on December 4, 2014, but the statute does not help him. Section 4202.2(b) provides that the clock begins to run "when the employee <u>gives notice</u> of the charges or conviction of a crime to the head of the department or agency <u>as required by Title 4 GCA § 4202.1</u>." (emphasis added). Section 4202.1 provides that an employee who is charged with a crime "shall provide the head of the department or agency employing the employee with <u>written notice of the charges</u> or the conviction within seventy-two (72) hours thereof." (emphasis added). Reading these statutes together, Section 4202.2(b) commences the 60-day clock when the employee *gives* management written notice, not merely (as Taisipic argues) when the employer *has* actual notice.[5] Here again,

---

[5] An employer's actual knowledge of the relevant facts already triggers the 60-day clock under 4 GCA § 4406(b)(1). If 4 GCA § 4202.2 likewise provided that the clock is triggered by the employer's possession of actual notice, then it would be redundant. The Court instead understands 4 GCA § 4202.2 to provide that the employee's act of *giving* written notice establishes a conclusive presumption of the date on which the employer "knew or should have known" the relevant facts. In other words, the purpose of 4 GCA § 4202.2

substantial evidence supports the finding that Taisipic *gave* his written notice on December 15, 2014, which is the relevant date for purposes of Section 4202.2(b). Thus, this statute only reinforces the conclusion that the 60-day clock began to run on December 15, 2014.

The CSC's factual findings regarding the 60-day rule were supported by substantial evidence and were not contrary to law. The Court therefore affirms the CSC's finding on this issue and **DENIES** Taisipic's Petition for Declaratory Relief.

### 3. The CSC's Failure to Make Findings of Fact is Reversible Error

GDOE raises five points of alleged error in the CSC's Decision and Judgment. The Court addresses only the fifth alleged error because it proves dispositive.

GDOE asserts, correctly, that CSC proceedings are governed by the AAL. *See Guam Police Dep't v. Civil Service Commission (Charfauros)*, 2020 Guam 12 ¶¶ 18-35 (holding that the AAL applies to adverse action proceedings). The AAL provides that an administrative body's decision "shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any." 5 GCA § 9232 (emphasis added). GDOE argues that the Decision and Judgment fails to make any findings of fact, most notably any findings by the two commissioners who voted in favor of Taisipic. GDOE Opening Br. at 16-17. The Court agrees.

The substantive portion of the CSC's Decision and Judgment is approximately one page long and provides the following:

> Employee Taisipic appeals to the Commission his termination from DOE. Employee was a special education teacher. He was arrested for sexual misconduct for two minors and his pre-trial release conditions prevent him from being near children and schools. DOE terminated him because he could not come to school to do his teaching job. . . .

---

is to foreclose an employer's argument that it did not learn the relevant facts until *after* it received the employee's written notice—not to foreclose an argument that it did not know the relevant facts *before* receiving written notice.

> The Commission heard testimony from witnesses and the Employee. The Chairman opined that Management's burden of proof is that of clear and convincing evidence because the final Notice of Adverse Action was for his inability to come to work as the result of his conditions of release from jail. He was not terminated for conduct which would be a crime. After deliberating, Commissioners Tuncap, Benavente, and Taitano voted in favor of Management. The Chairman and Vice Chairman Smith voted in favor of the Employee. In order to prevail, Management must get a favorable vote from four (4) Commissioners. Here, Management only got three (3) favorable votes and therefore the Employee prevails, and the Adverse Action is dismissed.

GDOE Petition, Ex. E at 2. There is no "findings of fact" section of the Decision and Judgment, nor are any of the statements above explicitly defined as the CSC's factual finding.

There is no Guam Supreme Court case law interpreting the "findings of fact" requirement of 5 GCA § 9232. However, Guam's statute is substantially similar to a prior version of Section 11518 of the California Administrative Procedures Act. *See, e.g., Jones v. Maloney*, 234 P.2d 666, 671 (Ct. App. 1951) ("Section 11518 provides: 'The decision shall contain findings of fact, a determination of the issues presented and the penalty, if any.'"); *Lucas v. Board of Education*, 532 P.2d 110, 114 (Cal. 1975); *see also Gutierrez v. Guam Election Comm'n (Calvo)*, 2011 Guam 3 ¶ 14 (noting the AAL is "substantially similar to the California Administrative Procedures Act.") Accordingly, the Court finds era-appropriate[6] judicial interpretations of Section 11518 to be persuasive. *Cf. Charfauros*, 2020 Guam 12 ¶ 38 ("Because the Legislature adopted [a different AAL provision] from California law, California authority interpreting the provision is persuasive to our own interpretation.").

---

[6] Cal. Gov. Code § 11518 was significantly amended in 1995, such that the statute is no longer applicable to the contents of an administrative decision. *See* Cal. Gov. Code § 11518, Editors' Notes (West 2025). Therefore, the Court finds California cases from before 1995 to be persuasive here.

California courts have held that an administrative body's findings of fact should be "liberally construed and need not be stated with the formality required in judicial proceedings." *Savelli v. Board of Medical Examiners*, 40 Cal. Rptr. 171, 177 (Ct. App. 1964); *see McMillan v. American Gen. Fin. Corp.*, 131 Cal. Rptr. 462, 468 (Ct. App. 1976) ("Other examples of the judiciary's willingness to focus on the substance rather than the form of administrative actions are legion."). With that said, liberal construction still has its limits. As the California Supreme Court has explained:

> The basic purposes of findings are to aid the court in determining whether there is sufficient evidence to support them, to enable the court to examine the decision of the administrative agency in order to determine whether it is based upon a proper principle, and to apprise the litigants or parties in regard to the reason for the administrative action as an aid to them in deciding whether additional proceedings should be initiated and, if so, upon what grounds.

*Swars v. Council of City of Vallejo*, 206 P.2d 355, 358 (Cal. 1949) (citations omitted). Thus, to enable meaningful judicial review, an agency must at least "render findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action." *Topanga Assn. for a Scenic Community v. County of Los Angeles*, 522 P.2d 12, 16 (Cal. 1974).

The Decision and Judgment does not permit meaningful judicial review, no matter how the Court construes it. First, if the Court construes the Decision and Judgment as making no findings of fact whatsoever, then it is deficient. *See, e.g., Lucas*, 532 P.2d at 114 ("Meaningful judicial reconsideration would be a hollow process in the absence of an explicit statement of factual findings and issue determinations from the administrative agency."); *Koons v. Placer Hills Union School Dist.*, 132 Cal. Rptr. 243, 246 (Ct. App. 1976) (noncompliance with section 11518 renders a decision "ineffective"); *In re Sturm*, 521 P.2d 97, 103 (Cal. 1974) (failure to make findings "is

fundamentally unfair because an already recognized right of access to a reviewing court is impaired thereby."); *see also State Bd. Of Psychological Examiners v. Norman*, 679 P.2d 1263, 1265 (Nev. 1984) (absence of findings "renders impossible a meaningful review of the Board's action by either the district court or this court: the Board has not provided us with any basis for review.").

On the other hand, the Court could construe certain lines of the Decision and Judgment to be inteded as findings of fact, such as "[Taisipic's] pre-trial release conditions prevent him from being near children and school," or "[Taisipic] was not terminated for conduct which would be a crime." GDOE Petition, Ex. E at 2. But even if the Court treats these statements as "findings," this would still not "enable the reviewing court to trace and examine the agency's mode of analysis." *Topanga*, 522 P.2d at 18.

An administrative body's decision must, at minimum, "point out the specific ground upon which the agency has based its decision[.]" *Savelli*, 40 Cal. Rptr. at 177; *cf. In re Dep't of Agriculture v. Civil Serv. Comm'n (Rojas)*, 2009 Guam 19 ¶ 31 (finding an action by the CSC "arbitrary and capricious" because it was undertaken "without articulating in its decision a reasoned basis for doing so."). The Court recognizes that the CSC's decision arises from the circumstance where, as a result of the "Rule of Four," the decision reflects the vote of a minority of the commissioners.[7] Nonetheless, the Decision and Judgment does not make clear what the commission as a whole, and those two commissioners in particular, actually concluded. There is no explicit conclusion in the Decision and Judgment that GDOE failed to prove its case, nor is it

---

[7] Title 4 GCA § 4402 provides that "[t]he affirmative vote of four (4) members shall be required for any action of the Commission." This has been interpreted as a "Rule of Four," meaning that "when the party with the burden of proof does not receive four votes for its position, the opposing party is entitled to a decision in its favor." *Guam Power Auth. v. Civil Serv. Comm'n*, 967 F.2d 586 *1 (9th Cir. 1992); *see also Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶ 65 (recognizing the Rule of Four).

clear in context what findings, or lack thereof, enabled such a conclusion. If the CSC found by clear and convincing evidence[8] that "[Taisipic's] pre-trial release conditions prevent him from being near children and school," then it is not clear what GDOE failed to prove regarding Taisipic's "incapacity to perform required duties.".

The hearing transcript suggests that Taisipic may have prevailed for several other reasons: for example, because at least one commissioner thought that GDOE failed to prove by clear and convincing evidence that Taisipic was actually incapacitated;[9] or because the termination failed to accord with GDOE's own procedural rules and regulations,[10] or because the charge against Taisipic was in fact merely pretextual,[11] or all of the above. The Court cannot speculate about what factors each individual commissioner considered, or to what extent, in rendering their votes. But absent *some* explanation of why the CSC ruled as it did, speculation would be the only possible mode of review.

---

[8] The Decision and Judgment states only that the Chairman "opined" that clear and correct evidence was the proper burden of proof; it does not state that the commission actually applied this standard. However, the Chairman was correct as a matter of law. *See* 4 GCA § 4407(a); *Port Auth. of Guam v. Civil Serv. Comm'n (Javelosa)*, 2018 Guam 9 ¶ 16.

[9] *See* Tr. at 42 (May 4, 2021) (Chairman: "Mr. Taisipic, as alleged by DOE Management, was incapacitated to perform his duties and responsibilities as a teacher. It's very obvious through observation that Mr. Taisipic has no physical or mental disabilities at all.").

[10] *See* Tr. at 45 (Chairman: "Management has the responsibilities to further discuss and to consider the matter with Employee Taisipic to find amicable resolution and to protect employee's right to due process. One attempt to remedy is for DOE Management to invoke with all personnel rules and regulation. DOE Rule -- (inaudible) -- it says -- (inaudible) examination to transfer Mr. Taisipic to another classified position with DOE subject to meeting the minimum qualification required if on the new position with no loss of pay and benefit while waiting for the outcome of his alleged case.").

[11] *See* Tr. At 39 (May 4, 2021) (Mr. Smith: "But at the end of the day, I'm going to vote for the employee. I think he—they just didn't want him around."); *id.* at 43 (Chairman: "If DOE is not accusing the employee of the alleged crime as charged, then I asked myself, why terminate him? To me, this is mind-boggling. I was not convinced or clear as to why Management [] terminated Mr. Taisipic.").

Each of the aforementioned consideration—if they were indeed considered by the commissioners—would prompt different analyses on judicial review. For example, if the CSC's conclusion was that GDOE failed to prove that Taisipic was actually incapacitated, the Court could review whether substantial evidence supported that specific conclusion. If the CSC's conclusion was that Taisipic's termination did not accord with GDOE's own procedural rules and regulations in terminating Taisipic, the Court could analyze the rules in question. Or even if the CSC's conclusion was explicitly based in holistic considerations of "wrongness" or "unfairness," the Court could potentially analyze whether these considerations properly bear on whether "the action of [GDOE] was *correct*" as provided by 4 GCA § 4407(a). But since there is no definite evidence in the record showing that these (or any other) considerations in fact formed the CSC's conclusion, it would be pointless to undertake these analyses.

The Court's task on judicial review is to determine whether the CSC's decision is "not in accordance with law or not supported by substantial evidence." 5 GCA § 9240. The Decision and Judgment does not permit either analysis. The Decision and Judgment does not make explicit findings or state the reason for its conclusion, and thus also does not explain the analytical link between its findings and its conclusion. The Court cannot review whether the Decision and Judgment is in accordance with law because it is not clear what principle of law enabled the conclusion. The Court cannot review whether the Decision and Judgment is supported by substantial evidence because it is not clear what evidence, if any, the CSC relied upon. Under these circumstances, meaningful judicial review is impossible. The Court therefore **GRANTS** GDOE's Petition and **VACATES** the CSC's Decision and Judgment.

## 4.     The Court Denies GDOE's Request for Costs

GDOE's Petition, though not its subsequent briefing, requests that the Court award it "costs on appeal" without elaboration on the basis for such an award. GDOE Petition at 15. In general, Guam follows the "American rule," which provides that "each party bears its own expenses of litigation." *Fargo Pacific, Inc. v. Korando Corp.*, 2006 Guam 22 ¶ 49. Exceptions to the American rule apply where cost-shifting is "(1) authorized by statute, (2) authorized by contract, or (3) allowed in judicially-established equitable circumstances." *Fleming v. Quigley*, 2003 Guam 4 ¶ 7. However, none of these circumstances are present here.

GDOE cites no statute authorizing its recovery of court costs. Although many Petitions for Judicial Review implicate 4 GCA § 4406.1, that statute does not apply here because it contemplates awards only to prevailing *employees*, not prevailing *employers. See id.* ("If an employee in the classified service . . . prevails in whole or in part before the Civil Service Commission . . . the employee shall be awarded and paid costs, if any[.]") (emphasis added). There is no applicable contract between the parties. None of the specific "equitable circumstances" recognized by *Fleming v. Quigley* appear to be present here. *See* 2003 Guam 4 ¶ 7 n.3 (noting "the common fund, substantial benefit, private attorney general, third-party tort, and bad faith theories of recovery" as recognized exceptions). Since "departures from the American rule are narrowly drawn exceptions," *In re Guardianship of Moylan*, 2018 Guam 8 ¶ 11, and since GDOE has not provided a justification for such a departure, the Court declines to award costs to GDOE.

## CONCLUSION

Based on the above analysis, the Court **DENIES** Taisipic's Petition for Declaratory Relief. The Court **GRANTS** GDOE's Petition for Judicial Review except for its request for an award of

costs, **VACATES** the CSC's May 20, 2021 Decision and Judgment, and **REMANDS** this matter

to the CSC for further proceedings not inconsistent with this Decision and Order.

> **SO ORDERED** this 2nd day of June, 2025.

> **HONORABLE DANA A. GUTIERREZ**
> Judge, Superior Court of Guam